# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| GLORY JEAN DELONEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 5:17-cv-00697-TMP |
| ) | |
| NANCY A. BERRYHILL, ) | |
| *Deputy Commissioner for* ) | |
| *Operations of the Social Security* ) | |
| *Administration*, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I.     Introduction

The plaintiff, Glory Jean Deloney, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Deloney timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the exercise of dispositive jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).

Deloney was 54 years old on the date of the ALJ's opinion. (Tr. at 27, 59). Her past work experiences include employment as a dye automation operator and

1

crew leader. (Tr. at 39-40). Deloney claims that she became disabled on October 29, 2013, due to reflex sympathetic dystrophy[1] of the lower right limb and GERD. (Tr. at 22). However, Deloney amended her alleged onset date to April 1, 2015. (Tr. at 20, 164).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id*. If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step

---

[1] Reflex sympathetic dystrophy is one type of Complex Regional Pain Syndrome. "Complex regional pain syndrome (CRPS) is a form of chronic pain that usually affects an arm or a leg. CRPS typically develops after an injury, a surgery, a stroke or a heart attack. The pain is out of proportion to the severity of the initial injury." https://www.mayoclinic.org/diseases-conditions/complex-regional-pain-syndrome/symptoms-causes/syc-20371151 (last viewed July 16, 2018).

three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove her inability to perform those

jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Deloney meets the insurability and duration requirements for a period of disability and DIB and was insured through December 31, 2019. (Tr. at 22). She further determined that Deloney has not engaged in substantial gainful activity since the amended alleged onset of her disability of April 1, 2015. *Id*. According to the ALJ, the plaintiff has the following impairments that are considered "severe" based on the requirements set forth in the regulations: reflex sympathetic dystrophy of the lower right limb. *Id*. However, she found that this impairment neither meets nor medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23). The ALJ did not find Deloney's allegations of pain to be entirely credible, and she determined that Deloney has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl; avoid concentrated exposure to temperature extremes; avoid all exposure to unprotected heights and moving machinery.

(Tr. at 23). According to the ALJ, Deloney "is capable of performing past relevant work as a dye automation operator."[2] (Tr. at 26). The ALJ concluded her findings by stating that Deloney "has not been under a disability, as defined in the Social Security Act, from April 1, 2015, through the date of this decision." (Tr. at 27).

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Mitchell v. Commissioner, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Miles*, 84

---

[2] According to the plaintiff's testimony, her job as a dye automation operator required her to watch a set of four monitors related to the introduction of dyes in the paper-making process. She indicated that she sat most of the time, only occasionally being required to go out to the machinery to restart or reset it, which took about five to six minutes. Otherwise, her job required her to remain seated at a panel of monitors. (Tr. at 39). A vocational expert testified that the Department of Labor categorized a dye automation operator as light work, although plaintiff's description of her job made it sedentary work. (Tr. at 40).

F.3d at 1400. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

The plaintiff argues that the ALJ's decision that she can perform past relevant work is not supported by substantial evidence. Specifically, the plaintiff contends that that ALJ erroneously concluded that the plaintiff's subjective complaints of pain were not entirely credible in contravention of the pain standard.

The Eleventh Circuit established a pain standard to direct ALJs in evaluating claimant's subjective allegations of disabling pain. Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Under Social Security Ruling ("SSR") 16-3p,[3]

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms

---

[3] SSR 16-6 became effective on March 16, 2016, before the hearing with the ALJ on April 25, 2015, and her decision dated May 23, 2016.

> are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2017 WL 5180304, at *10 (2017).[4] Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*.

The ALJ determined that the plaintiff met the first step of the pain standard; that is, the plaintiff provided evidence of an underlying medical condition. *See Dyer*, 395 at 1210. The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.

---

[4] "SSR 16-3p eliminates the term 'credibility' from social security policy but does not change the factors that an ALJ should consider when examining subjective pain testimony . . . . SSR 16-3p provides clarification of the subjective pain standard; it does not substantively change the standard." Harris v. Berryhill, No. 5:16-cv-01050-MHH, 2017 WL 4222611, at *3 n.2 (N.D. Ala. Sept. 22, 2017); *see also Griffin v. Berryhill*, No. 4:15-cv-0974-JEO, 2017 WL 1164889, at *6 n.10 (N.D. Ala. March 29, 2017) ("The Eleventh Circuit's pain standard is consistent with the parameters that SSR 16-3p set forth."). The 2017 version of SSR 16-3p supersedes the March 16, 2016, version only to address the applicable date of the ruling and its retroactivity. 2017 WL 5180304, at *13 n.27. The versions are materially the same in all other respects. *Compare* 2017 WL 5180304, *with* SSR 16-3p, 2016 WL 1119029.

. . ." (Tr. at 24). However, the ALJ determined that the plaintiff did not meet the second or third step of the pain standard. *See Dyer*, 395 at 1210. The ALJ held that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record for the reasons explained in this decision." (Tr. at 24). The ALJ elaborated:

> The claimant testified she stopped working after 22 years at International Paper. She went on medical leave at first and then received severance pay when the plant closed. She testified she cannot stand for long periods of time due to numbness in her leg. She also has to elevate her leg frequently. She has severe pain in her leg at 6-7/10, 10-12 days per month. She takes stronger pain medication during this time, which causes her to feel sleepy. During this time, she takes 2-3 hour naps. She can sit 5-6 minutes before needing to get up and stretch. She testified she can walk a few blocks before needing to rest. She testified she tries not to bend over due to pain. She also testified she needs help getting in/out of the shower. She is able to wash dishes, go to the grocery store and she drives 4-5 times per week. She takes classes online and goes to the school one day every other week to take tests.
>
> . . .
>
> In terms of the claimant's medical evidence, Exhibit 5F contains pain clinic records. In 2000, the claimant suffered a crush injury at work to her right foot. She underwent surgery in 2002 and 2005. In February 2015 records show she had a steady gait and was ambulating independently. Notably, she stated at this time she was looking for another job because the plant closed in 2013. She also reported good relief from pain by using ibuprofen with no adverse side effects. She was diagnosed and treated for sympathetic dystrophy of the right leg. She was given a prescription for Neurontin at this visit and was encouraged to swim, stretch daily and exercise for weight loss. In

9

March 2015, the claimant underwent a lumbar spinal block. Most of the claimant's records show reported pain on a good day at 3/10 and on a bad day at 9/10. At the time of the amended onset date, the claimant reported she was starting back to school because the government would pay 100% since the plant closed that she was working for. Notably, the claimant testified she has to lie down frequently to elevate her leg; however, her treating physician, Dr. Morgan did not give such orders in the treatment records. She also did not mention to Dr. Morgan that she was lying down frequently and elevating her leg. In May 2015, she underwent another lumbar block. A few weeks later, she presented to the clinic requesting pain medication to help her sleep. She stated she had good response from the lumbar block until she started school. She had some distal weakness in the right leg but no edema was noted. She had another lumbar block in August 2015. In September 2015, she reported low back pain radiating to the right hip at 6/10 on the pain scale. At this time, she reported the medication allows her to go to school and take care of her kids. She had another block in October 2015. In December 2015 there is a note stating she is no longer prescribed narcotic pain medication because her past two urine drug screens were negative for narcotics. She had another block in January 2016.

. . .

Exhibit 11F contains additional records from Dr. Roberts at the pain clinic. At the last visit of record in February 2016, the claimant reported 90% relief of pain after the last block with good relief using the medication and no side effects. She reported her worst pain was in her right foot and thigh at 4/10. She requested a support letter from Dr. Roberts for her disability. Examination findings showed normal gait, no clubbing, no obvious edema in the right lower extremity, normal left lower extremity and distal weakness in the right lower extremity. In April 2016, the claimant underwent another lumbar block and Dr. Roberts noted, "I told her she would have to have a functional capacity evaluation with respect to her overall functional status." This was in response to the claimant's request for Dr. Roberts to complete a disability opinion.

. . .

The claimant's nurse practitioner, Alan M. Heidt, CRNP, submitted an opinion at Exhibit 10F. Mr. Heidt stated the claimant's pain is aggravated by movement. She is unable to stand more than 10 minutes at a time and unable to sit without breaks more than one hour at a time. She [sic] advised to keep her leg elevated as much as she can to alleviate pain (Exhibit 10F). Little weight is afforded to this opinion as this opinion is from a non-acceptable medical source pursuant to the Regulations. Furthermore, claimant was not prescribed pain medication from May 2015 through January 2016 (30 day supply); therefore, she essentially used non-narcotic medication to treat her pain during most of the period under consideration. There are also notes in the file stating the claimant was not given any additional pain medication by the pain clinic due to having two drug screens that did not show narcotic pain medication in her system despite a prescription for such. This opinion is not supported by the totality of the evidence. The claimant's gait is normal and her extremities have normal strength with some distal weakness in the right leg. Pain clinic notes show she responded well to lumbar blocks and pain medication with no reports of side effects. At the hearing, she testified to side effects of medication and difficulty walking and bending; these symptoms are simply not noted in the treatment files to the extent alleged by the claimant at the hearing. There are no treating or examining opinions of record relevant to the period under consideration.

Exhibit 7F contains various statements that were provided to the claimant's short term disability insurance company. There is a note from Dr. Roberts (signature is illegible) dated February 19, 2014 stating the claimant was disabled from October 29, 2013 through April 29, 2014. This note also states the claimant was unable to stand more than 15 minutes without needing to change positions; the spinal cord stimulator was awaiting approval but Dr. Roberts (presumably) stated hopefully with the stimulator the claimant's pain would return to the baseline and she could return to work. In August 2014 it was noted by presumably Dr. Roberts that the claimant could return to regular work duty at the light level with no walking or standing for more than 30 minutes at one time. No weight is afforded to these opinions as they are well before the amended alleged onset date. One statement states the claimant could return to work in August 2014; however, the plant had closed at this time and there was nothing to

return to. Furthermore, these are statements provided for temporary disability and are not statements meant to be considered permanent in nature. The claimant received a severance package from her employer when the plant closed in August 2014. She testified she looked for work but no one would hire her due to liability. Thus, it does not appear the claimant stopped working due to health reasons as the plant closed.

While the allegations regarding the nature of these symptoms are found to be supported within the medical and other evidence of record, the contentions regarding the severity of, and the related functional restrictions, are not supported. The undersigned has carefully read and considered all the evidence of record, regardless of whether it is specifically cited in the decision and finds that the residual functional capacity set forth above is more consistent with the appropriate medical findings and the overall evidence of record than the allegations made by the claimant.

(Tr. at 24-26).

The plaintiff argues that substantial evidence does not support the ALJ's findings regarding the intensity, persistence, and limiting effects of her pain because she "was intensively treated for her low back pain and reflex sympathetic dystrophy of the lower limb . . . [Tr. at 501-609, 636-808, 872-883]." (Doc. 17, p. 7). She asserts that the records are consistent with her testimony, specifically alleging that the medical records reflect that she "more often than not reported pain levels . . . 7-10 out of 10 on the pain scale" and that her pain levels were aggravated by activity such as bending, standing, and walking. (*Id.*). Furthermore, the plaintiff contends that the ALJ mischaracterized the relief that she received

from approximately 15 lumbar spinal blocks, explaining that the relief typically lasted only three to four weeks. (Doc. 17, pp. 7-8).

Despite the evidence supporting the plaintiff's arguments, substantial evidence supports the ALJ's findings that the plaintiff failed either to show objective medical evidence that confirms the severity of the pain or that the medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *See Dyer*, 395 at 1210. The ALJ explained that the plaintiff's subjective testimony of pain was inconsistent with the medical record. As set out above, the ALJ cites both the medical records as well as the plaintiff's own testimony to support her determination that the plaintiff's subjective pain testimony is not credible.

Specifically, substantial evidence supports the ALJ's decision as it relates to the plaintiff's credibility regarding the intensity, persistence, and limiting effects of her pain. Despite reporting pains levels at seven or greater during her clinic visits, the ALJ noted that Dr. Roberts, a physician employed by Tennessee Valley Pain Consultants, discontinued the plaintiff's prescription for narcotic pain medications in either April or May 2014 because the plaintiff's two previous urine drug screens were negative for the controlled medications prescribed by Dr. Roberts, indicating that the plaintiff no longer needed narcotic pain medication to manage her pain. (Tr. at 538-39, 548-49). From May 2014 to the present, the plaintiff has managed

her pain with a combination of Neurontin,[5] ibuprofen, aspirin, and a compounded cream, in addition to regularly prescribed lumbar spinal blocks every two to three months. (*See* tr. at 539) ("Discussed tx option with pt – Options include medications/injections/physical therapy/surgical consideration"); (*see also* tr. at 538, 548, 531, 505, 648, 664, 673, 688, 697, 713, 722, 737, 746, 762, 772, 788, 798, 877). Dr. Roberts has since refused to prescribe for the plaintiff any narcotic pain medications on a regular basis (tr. at 505, 532, 539, 664, 688, 714, 737, 762, 789, 878), except for three- to four-day dosages, which typically follow a lumbar spinal block (tr. at 229-231, 698, 723, 799). Following a lumbar spinal block, the plaintiff typically reported relief of seventy percent or greater for approximately three to six weeks. (Tr. at 505, 532, 664, 688, 713, 737, 762, 788-89, 877-78). The plaintiff explained that her pain was better with the combination of lumbar spinal blocks and her medications, reporting good relief and no side effects. (*See* tr. at 505, 532, 539, 548, 664, 688, 713, 737, 762, 789); (*see also* tr. at 878) ("Currently Rx'd Neurontin 300mg 4/d, Ibuprofen 800mg 2/d and Comp cream – working well to manage pain, denies SE – states her meds work more effectively while getting relief from her procedure . . . No changes in regimen, as pt is stable."). In September 2015, the nurse noted that the plaintiff reported that

---

[5] Neurontin is the brand name for gabapentin, an anticonvulsant and antiepileptic medication also used to treat nerve pain. https://www.webmd.com/drugs/2/drug-9845-8217/neurontin-oral/gabapentin-oral/details (last viewed July 16, 2018).

14

Neurontin worked well and did not report any side effects with her current medications. (Tr. at 762). In a recent procedure note, Dr. Roberts dictated that the plaintiff "always gets very good relief with these procedure about 2 months at a time." (Tr. at 882). Substantial evidence supports the ALJ's reasonable conclusions that the pain was not as intense, persistent, or limiting as the plaintiff claimed given that she was not consistently prescribed narcotic pain medications after April 2014. Objective evidence further supports the ALJ's conclusion that the plaintiff's pain management plan was reasonable; regularly scheduled lumbar spinal blocks, in combination with non-narcotic pain medications, effectively managed the plaintiff's pain.

Additionally, substantial evidence supports the ALJ's decision as it relates to the claimant's activity levels, which undercuts the plaintiff's credibility regarding the intensity, persistence, and limiting effects of her pain. Despite complaints about the ability to sit, stand, or walk, Dr. Roberts repeatedly noted that the plaintiff ambulated independently and that she had a steady gait. (Tr. at 502-03, 515-16, 525, 529-30, 536-37, 546, 561, 568-69, 579, 586, 602, 647-48, 661, 672, 685, 696, 710, 721, 735, 745-46, 759-60, 771-772, 785-86, 797-98, 812-13, 823-24, 874-75). Admittedly, Dr. Roberts makes varying notations that the plaintiff reported that activity, such as standing and walking, aggravated her level of pain. (Tr. at 502, 515, 524, 529, 536, 546, 561, 568, 579, 586, 661, 685, 710, 759, 785,

812, 823, 874; *see also id.*). However, Dr. Roberts still noted that she ambulated independently and that her gait was steady despite repeatedly reporting these alleged aggravations and pain levels of seven or greater during clinic visits. (*Id.*). He also advised her to stretch and swim regularly as part of her treatment. Furthermore, her function report indicated that she prepared food or meals two to three times a week, in addition to completing light cleaning and laundry for eight to ten hours each day and going shopping for about fifteen minutes to one hour twice a week. (Tr. 186-87). Moreover, the plaintiff reported that she was looking for a job in 2014 and attending school in 2015. (Tr. at 505, 664, 688, 713-14, 737, 762). Her current medications, which included Neurontin, ibuprofen, aspirin, and a compounded cream, permitted her to attend school and take care of her children. (Tr. at 762).

The determination of credibility is left to the ALJ, and the ALJ is entitled to discredit the plaintiff's assertion of the severity of her pain so long as she articulates explicit and adequate reasons for doing so. Here, the ALJ has done so.

**IV. Conclusion**

Upon review of the administrative record, and considering all of Deloney's arguments, the Court finds the Commissioner's decision is supported by substantial evidence. A separate order will be entered.

DONE this 16th day of July, 2018.

                                                                               */s/ T. Michael Putnam*
                                                          T. MICHAEL PUTNAM
                                                          UNITED STATES MAGISTRATE JUDGE